Good morning. Robert Kim appearing on behalf of Appellant Defendant James Pua Aglia. Your Honor, there are several issues here today. Let me summarize as follows. The first, and in fact all of them deal with procedural due process under our Constitution. The first set of issues relate to the trial itself. The record, as you've reviewed, indicates that the jury was being impaneled and the United States had notified the defense and the court through a submission that they had a witness that was not disclosed on the final pretrial order. The final pretrial order, under the local rules, requires all witnesses to be named. No motion was filed to add this person as a witness, Mr. Ikeoki Rivera. This was a key witness in the case. The entire trial before the district court was 72 hours. The defense counsel, federal public defenders, had timely objected to the inclusion of this trial so that they could, at the bare minimum, determine whether there was a conflict in their office with the inclusion of this witness. They had timely moved for a continuance of the trial. All were denied by the district court. You know, counsel, the defense counsel did a very good job in finding out about this fellow and cross-examining very effectively. What prejudice can you show from the failure to grant the continuance? Thank you. That was raised by the government in their brief. The prejudice and let me first state that the trial counsel in that case did an admirable job under the conditions that he had and that he attempted to cross-examine the witness based upon the plea agreement as well as other facts. The prejudice in this case is twofold. Number one is preparation. While he did an admirable job, he could have had more time to prepare. And second, which is the primary reason, he could have followed up with other witnesses and subpoenaed other witnesses based upon the testimony. I did not The problem is we don't know that. In other words, there's no, we don't know now what was left out. There isn't any kind of an offer or a post-trial motion or anything else putting testimony of witnesses who could have testified for. It's all utterly speculative on our part, I think, to say that, well, there could have been other, there could have been more preparation. There could have been other witnesses that could have been. You mentioned that there wasn't a continuance so that they could find out if there were conflicts with this witness. I mean, I understand what I and I hear what the court is saying, Your Honor. Part of the preparation issue, which I neglected to present, was the fact that when the defense had asked based upon this late submission without motion for an opportunity to interview the witness, they were denied that opportunity to even have an interview. The witness, as I understand the record, refused to meet with the other side. That's correct. So time would not have killed that, would it? Well, I can only present the evidence as it was unfolding in the trial. That was not trial counsel. I can only tell you that being a trial counsel, to have such an event take place on the eve of actually presenting your opening statements, I believe opening statements were shortly thereafter, is, in my mind, almost a per se prejudice. One, when the United States Supreme Court in the case... Well, why is that? I mean, if you're a good trial lawyer, you need to be quick on your feet and your mind's got to work quickly and you've got to rally up all those resources. You're two days over here and there was no warrant for approval. I think your presence argument is not going to get you very far. I accept your argument. What about the second issue here, isn't there? Yes. The second issue... As far as whether escape is a crime of violence. Yes, Your Honor. The next set of issues related to procedural due process relates to... So you've only got ten minutes of argument. Yes, sir. You've covered all this in your brief. So go for the big thing. Thank you. With regard to the second issue related to whether or not the court abused its discretion when it imposed an upward departure without giving Mr. Agley a notice, and the second part of that, and concluded as a matter of law that a conviction for escape constituted a crime of violence. Those are the two issues which the court is zeroing in on. Basically, it is my position that the Rule 32H was violated. The United States has argued that because they had argued in their response that such an upward departure was appropriate, the probation officer did not agree, and the district court, over objection, had determined that it would give an upward departure based upon that fact as a matter of law, without any information upon which to base that decision. I was present at that time and had argued to the district court, in brief as well as orally, that there was no controlling precedent in the Ninth Circuit, that the Ninth Circuit, as well as the Supreme Court, had not ruled on that matter. What matter? On the matter of whether or not escape would be constituting a crime of violence as a matter of law. Was that issue raised on appeal? The issue with regard to escape? Yes, sir. Yes, sir. In my brief, it indicates in the argument, that's why I said it was twofold, Your Honor, that the district court abused its discretion when it imposed an upward departure without giving notice to Mr. Aglia, and concluded as a matter of law that a conviction for escape constituted a crime of violence. And so I'm raising on appeal the issue that the Ninth Circuit had not made that determination. Have you spread the Piccolo case? No, Your Honor. That was recently decided, and we held that escape is not a crime of violence as a matter of law. That in that particular case, the individual had walked away from a halfway house, and we found that that was not a crime of violence. You'd better get to the Piccolo case, but I'll also tell you that that case is not final. The mandate has not gone down, and there may be some further proceedings in it, but I think it's important that you do look at the Piccolo case. And the government may also know about that case. That's 441 Fed Third, 1084. Thank you, Your Honor. Argue it was filed on April the 3rd, 2006. Thank you, Your Honor. I will address that matter. May I reserve the balance of my time for rebuttal? Thank you. Good morning, Your Honor. May it please the Court. Marshall Silverberg on behalf of the United States. I'm not sure if you want me to jump ahead to the Piccolo issue, which I think is really the only issue before the court, or whether you would like me to address the other matters raised in the brief. Well, let's talk about Piccolo first. Is there anything in the record that we can look at that shows what the nature of the escape was? The only thing you have is paragraph 31 of the pre-sentence report, which we did file under seal with the court. And there it reflects that the defendant walked away from a halfway house like in Piccolo, but did it only after threatening two staff members to have a fight with them. So beyond that, we don't have the plea agreement in the record at this time, because at the time Ms. Adlai was sentenced, the law was such that there was no reason to believe that this court would go different than the other circuits. But if that matter would be remanded, then we would argue under the modified categorical approach under Taylor, the facts here did have the potential for violence under the crime of violence analysis under the guidelines. You have to find it somewhere other than the pre-sentence report. I understand that. And we would. Yes, we have. And that's all we have at this point. But there was a guilty plea. There will be a plea agreement. And that would be the basis for it. You can only look at certain documents under the Savage case or this Shepard case. So in any way, that's kind of an open issue at this moment. Well, I guess. But I don't think Shepard excluded a pre-sentence report. What he excluded was police reports. And there was no objection at sentencing that the pre-sentence report was inaccurate or otherwise the factual basis was contested. So I don't I would not concede that Shepard says you can't look at the pre-sentence report because the court did adopt the factual statements in the pre-sentence report to the extent that they were not in dispute. That fact was not raised in dispute and was adopted by the court as a factual finding. So I don't want the court to think I'm conceding that the pre-sentence report could not be the basis for the modified categorical approach. I believe it could be once the fact that the defendant did not object to it and the court adopted it as a factual finding. I don't see any difference between that and a plea agreement where the defendant makes omissions as well. Well, I suppose we don't need to pursue this, but there it's still a modified categorical approach, not a fact approach. And if the pre-sentence report just goes into just pure facts of what happened rather than what the documents establish is happening. I'm not sure that I accept your statement. It depends what if the pre-sentence report simply echoes things that maybe could be determined from the indictment or the plea statement or the plea agreement. And then you might be right. But I'm not certain we're anticipating too much here. It's an argument to be made in the future. My recollection of Shepard was that they disputed the accuracy of the police reports. And that's why it became an issue. I submit, and again, I wasn't prepared to argue Shepard, and that's just based upon my recollection. But I would submit that that's how this case is different in Piccolo. Because in Piccolo, the defendant merely went to a drug testing session and just walked away. Here there is evidence in the record, at least to the limited extent, that there was a threat of violence. The reason that there was no objection to that may be that because Piccolo hadn't come down, they didn't think it was relevant or productive to object to that fact finding. In any event. I think Shepard had been decided, though. So it can all be figured out later. That's not encouraging. As to the other issues, we submit that there was no error. There was no abuse of discretion allowing the government to call the witness that we didn't know about. And I've had many trials where a witness would be on the witness stand. They'll say something that no one knew or anticipated that led us to the discovery of additional evidence. It's usually the defense that comes up with that. And that leads to the testimony of new witnesses. And in this case, this witness was very important. We had no way of knowing about him. And that's why we presented to the court at the earliest possible moment. And the court allowed us to call his testimony. He did. Although the court did say it was denying the defendant's motion for a continuance, in essence, it granted it in part in that it prohibited us from putting on his testimony the next day like we had planned. Instead, we had a weighted day, and we turned over all the reports. As Your Honor indicated, Mr. Domingo, who happens to be in the courtroom today on a different matter, he was the trial counsel, was able to effectively cross-examine the witness regarding his immunity agreement with the government, his drug use on the day in question, the fact that his acknowledgment of drug use might result in his probation being revoked on the state side. I mean, all these things came out in cross-examination. And Mr. Domingo was very effective in arguing them during his closing argument. Of course, the jury did find the defendant guilty as charged for a very short period of time. But I would submit that was based upon the fact that the defendant was sitting in the car with the counterfeit money underneath his body and within his reach, and he lied about the money, lied about his name, tried to hide the money. He fell out of a newspaper. Claimed that he fell out of the newspaper. I mean, even Judge Gilmore found that hard to believe, and that's why she refused to accept his guilty plea when it looked like we had a guilty plea. I mean, it was not one of the best explanations for criminal conduct I think she ever heard. Thank you. Thank you very much, Your Honor. Thank you. In rebuttal, I would just note that in the briefs and in the record, I did object at the time that the judge attempted to sua sponte, determine that escape was a crime of violence per se. All right. Thank you, sir. All right. We go instead. Thank you very much. The matter will stand submitted.
judges: Goodwin, B. Fletcher, Fisher